# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **IRMA I. DONATO MALAVE** | \* | |
| **45953 Indian Way – #922** | \* | |
| **Lexington Park, MD 20653** | \* | |
| | \* | |
| **Plaintiff** | \* | |
| | \* | |
| v. | \* | Civil Case No.:_____ |
| | \* | |
| **KAREN H. ABRAMS** | \* | |
|    St. Mary's County Judge, | \* | |
| | \* | |
| **CHRISTOPHER B. KEHOE** | \* | |
| **STUART R. BERGER** | \* | |
| **JAMES P. SALMON** | \* | |
|    Court of Special Appeals Judges, | \* | |
| | \* | |
| & | \* | |
| | \* | |
| **ROBERT M. BELL** | \* | |
|    Court of Appeals Chief Judge. | \* | |
| | \* | |
| Serve: Douglas F. Gansler | \* | |
|      Attorney General | \* | |
|      200 St. Paul Place | \* | |
|      Baltimore, Maryland 21202 | \* | |
| | \* | |
| **Defendants** | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT
**Due Process Violation**

JURISDICTION

    1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1331, namely, actions arising under the Constitution, laws, or treaties of the United States.

2. Absent waiver of immunity or the exercise by Congress of its power under section 5 of the Fourteenth Amendment to override state immunity, lawsuits in federal court against a state (or state official) by citizens are barred. However, the United States Supreme Court has made an exception which applies herein, namely, when a state official acts in an unconstitutional manner, hence rendering the action not authorized by the state. Pennhurst State School Hospital v. Halderman, 465 U.S. 89, **102**, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983).

PARTIES

3. Irma I. Donato Malave (hereinafter "Plaintiff") is a resident of Maryland who, in 2009, was thrown from a St. Mary's County Public Bus (and severely injured) due to it accelerating before she completed her exit.  Thereafter, the Courts of Maryland deprived her of a minimally fair trial due to multiple bias decisions (or non-decisions), leaving her physically impaired, emotionally traumatized, and financially ruined.

4. Defendants, Karen Abrams, Christopher Kehoe, Stuart Berger, James Salmon, and Robert Bell are State of Maryland Judges serving in its circuit and appellate courts, operating under state statutes which control the courts in the State of Maryland, namely, [i] Maryland Code, Court and Judicial Proceedings Article, Title 1, Subtitle 2, Section 1-201(a) and [ii] Annotated Code of Maryland, Maryland Rules, Volume 1, page 8.

PROCEDURAL REQUIREMENTS

5. On June 1, 2011, a judgment of the Circuit Court for St. Mary's County was

rendered against Plaintiff (after a jury trial preceded by numerous procedural and evidentiary errors [outlined in detail below]).

6. On November 1, 2012, the Court of Special Appeals of Maryland refused to reverse the circuit court despite [1] violations of the "letter" of the rules of procedure and evidence and [2] the determinative nature of the errors to the case.

7. On February 25, 2013, the Court of Appeals of Maryland denied the Plaintiff's petition for a writ of certiorari.

8. On May 20, 2013, the Court of Appeals of Maryland denied Plaintiff's motion for reconsideration.

FACTS *(Documented)*

9. On July 17, 2009, Plaintiff was exiting St. Mary's County Bus #35.

10. With one foot on the ground and the other still on the bus, the bus driver accelerated the bus and drove away, throwing Plaintiff to the ground.

11. Plaintiff was rushed to the emergency room, suffering serious injuries.

12. The bus driver, a man in his mid-seventies, gave contradictory explanations of how the accident happened, admitted to not knowing where Plaintiff's feet were located before the accident, admitted to taking eight (8) different pills on the morning before the accident (two of which were powerful prescribed medications with common side effects of weakness, drowsiness, and dizziness), and admitted to not knowing how long he had been on the pills and what he was taking them for.

*The Errors Violating Constitutional Due Process*

*[A]*

13. Plaintiff formally requested the medical records of the Defendant, and Defendant refused to provide them.

14. Defendant (and St. Mary's County) would not, and did not, provide any medical records about Defendant's health, eye exams, hearing exams, or physical examinations before being permitted to drive a county bus.

15. Plaintiff's motion to compel was denied by the circuit court, despite clear explanations of the determinative nature of the information, especially since Plaintiff was approximately three feet from Defendant's shoulder before he drove the bus forward, denoting an impossibility of not seeing or hearing her unless physically or mentally compromised.

16. The circuit court also kept Plaintiff from getting the names of Defendant's medical providers, something historically and fundamentally in violation of basic procedure and law.[1]

17. In an effort to overcome this interference with Plaintiff's attempts to prove her case, her counsel sought a Rule 2-423 Mental/Physical Examination of Defendant, and the court blocked that also.

---

[1] Annotated Code of Maryland, Maryland Rules, Rule 2-402(a) **AND** Baltimore Transit Co., v. Mezzanotti, 227 Md. 8, 174 A.2d 768 (1961); Klein v. Weiss, 284 Md. 36 (1978); Williams v. Moran, 248 Md. 279 (1967)

18. Maryland Rule 2-402's broad scope of discovery was made unavailable to Plaintiff regarding determinative information in this "driver error" case.

[B]

19. After Defendant sought a Rule 2-423 Independent Medical Evaluation of Plaintiff and Plaintiff requested the information that the rule mandates (e.g., manner of exam, conditions, scope of examination, etc.), Defendant refused to provide it.

20. Because the pre-exam information was explicitly required by Rule 2-423, Plaintiff would not proceed without the protections afforded by the rule.

21. Defendant filed a Rule 2-423 motion to compel the exam, and the circuit court granted it, without the protections explicitly mandated by the rule.

22. Plaintiff filed pleadings dated March 18, 2011, April 7, 2011, April 13, 2011, and April 25, 2011 highlighting the language in the Rule and its important protections for the Plaintiff.  The circuit court denied all of Plaintiff's requests for the protections in the Rule.

23. The IME went forward (using less than 10 minutes), and a video was played in front of the jury using information from the IME that contained various inaccuracies, countering Plaintiff's medical history and sworn statements from her doctors.[2]

24. Plaintiff's objections to the IME and playing the video in front of the jury were overruled.

---

[2] Plaintiff's Motion In Limine #5 outlined detailed medical inaccuracies in the IME.

25. Plaintiff's objections also pointed out that the video was created over two months after the close of discovery and <u>five days</u> before trial, putting Plaintiff in the unbelievable predicament of stopping trial preparation for an 11th hour video deposition designed to undermine Plaintiff's case.

*[C]*

26. Defendant was allowed to [i] create a DVD of Plaintiff months after the close of discovery, [ii] keep the DVD concealed from Plaintiff until the month of trial, [iii] provide a version that was un-readable, [iv] introduce this hearsay into evidence over multiple objections, and [v] play it in front of the jury.

27. Plaintiff's objections were overruled immediately by the circuit court, without any request for the basis.[3]  Both the Maryland Court of Special Appeals and Court of Appeals refused to review this admission of hearsay into the case.

28. The DVD showed Plaintiff pick up a small child for a few seconds and put her in the car, suggesting she was injury free.

29. Plaintiff had been treated for two years by the time he endured this pain to help a child and had numerous medical records proving she was in need of surgery, experiencing pain, and on medication.

*[D]*

30. When Plaintiff called her treating doctor as both a fact witness and expert, he

gave unequivocal testimony that [1] he ordered Plaintiff's medical records from the emergency room and her orthopedic specialist; [2] he received them directly from the providers; [3] he reviewed them; [4] he found them proper and consistent with Plaintiff's explanation of what happened to her (i.e., being thrown from a moving bus); [5] none of Plaintiff's past illnesses related to her traumatic injury from the bus accident, and [6] Plaintiff's injuries were causally related to the bus accident.[4]

31. When Plaintiff moved the emergency room medical records into evidence, they were objected to and the circuit court sustained the objection, preventing their admission.

32 When Plaintiff moved the orthopedic medical records into evidence, they were objected to and the court sustained the objection, preventing their admission.

33. When Plaintiff addressed the proper connection of the records with Plaintiff's injuries, Plaintiff's testimony, and her doctor's testimony, the court refused to admit them.

34. When Plaintiff invoked the medical records exception to the hearsay rule, the court refused to admit them.

35. When Plaintiff presented the medical providers' Certificates of Authenticity for their medical records, the court refused to admit them.

---

[3] By rule, this means that Plaintiff's objections are preserved for review. **Maryland Rule 5-103(a)(1).**

[4] Trial Transcript, pages 132-153.

36. When Plaintiff requested the basis for Defendant's objection, the court gave it as failing to present evidence that medical treatment was appropriate and related to the incident. And, that no one related the medical records to the trauma.

37. Plaintiff's doctor testified precisely to the treatment being appropriate and related to the incident. He also related the medical records to the trauma.

38. Plaintiff's medical records from the emergency room treatment and orthopedic treatment were excluded from evidence, and as such, the foundation supporting her testimony of what happened, how it happened, and the results (i.e., injuries, treatment, expenses, costs, etc.) was removed from the case.

39. Without the foundation Plaintiff rightfully established, the case collapsed.

*[E]*

40. Upon departure from the trial in disbelief, a juror boarded the elevator with Plaintiff, her counsel, and another person.

41. The juror shared that the jury "felt bad for the Defendant" (a senior man in his mid-seventies on various medications).

42. The court gave specific instructions to the jury to not consider "sympathy for any party" (MPJI 1:5).

43. Plaintiff filed Rule 2-533 and 2-534 motions (with affidavit) to vacate the jury's decision due to the unquestionable disobedience during deliberations, producing a tainted and unjust decision.

44. The motions were denied.

*[Conclusion]*

45. At pre-trial, trial, and post-trial, Plaintiff was deprived of the enforcement of rules of procedure, rules of evidence, and court directions for a fair and just trial.

46. Defendant was prejudicially assisted by being allowed to conceal relevant and material information, engage in discovery months past the deadline, bring hearsay into evidence over objection, play videos in front of the jury containing false and misleading information, and otherwise disregard rules of procedure and evidence with impunity.

47. The accumulation of not enforcing the most basic procedural and evidentiary rules, supported by the entire judiciary of Maryland, deprived Plaintiff of her "day in court," in violation of constitutional due process.

48. The Judges' actions (or non-actions) stripped Plaintiff of her right to due process, under the Fifth and Fourteenth Amendments to the United States Constitution, and was an affront to the supreme authority of the United States.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

[a]　enjoin enforcement of any decision involving defendants in the case of

　　　<u>Irma I. Donato Malave v. Everett Leroy Owens</u>,

[b]　grant Plaintiff a new federal trial before a United States District Court Judge

　　　against Everett Leroy Owens and St. Mary's County OR return the case to the

　　　State of Maryland with a specially appointed Judge charged with strict and proper

enforcement of all rules of procedure and evidence, including but not limited to correcting the errors outlined in this complaint,

[c]  enjoin any and all concealment of relevant and material information from Plaintiff in all future trials/hearings regarding her bus accident,

[d]  enjoin the use of any and all information from her state trial that violated the rules of procedure and evidence outlined in this complaint,

[e]  grant Plaintiff approximately eighteen thousand one hundred and fifty dollars ($18,150.00) in damages for being forced to legally "fight" for her right to due process, costing great time, expense, and funds,

[f]  grant Plaintiff the right to recover all attorney's fees and costs, prospectively, for having to re-try her case due to the unjustified denial of due process throughout her legal pursuits in state courts,

[g]  enjoin any and all state officials and others from erecting any barriers (legal, administrative, contractual, or otherwise) to Plaintiff fully pursuing and/or recovering all costs, expenses, damages, etc. in future trials/hearings related to her bus accident, and

[h]  such other and further relief as the court deems proper.

*I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Complaint are true.*

       /s/*
Ms. Irma I. Donato Malave       Date

*\*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.*

       /s/
Rickey Nelson Jones
Law Offices of Reverend Rickey
    Nelson Jones, Esquire
3rd Floor – Suite 5
1701 Madison Avenue
Baltimore, Maryland 21217
(410) 462-5800

Attorney for Plaintiff